UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY EASON,

      Movant,

                                          File No. 1:07-CV-674

v.

                                          HON. ROBERT HOLMES BELL

UNITED STATES OF AMERICA,

      Respondent.
                                    /

**O P I N I O N**

This matter comes before the Court on Anthony Eason's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct the sentence imposed upon him by this Court. For the reasons that follow the motion will be denied.

**I.**

On May 9, 1996, Eason was charged in an indictment with conspiring to distribute and possess with intent to distribute cocaine and crack cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (the "Curtis conspiracy"). *United States v. Eason*, File No. 1:96-CR-72 (W.D. Mich.) (Dkt. No. 1.) On November 19, 1996, Eason was charged in a second superseding indictment in a separate case with conspiring to distribute and possess with intent to distribute cocaine, crack cocaine, and marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 (the "Ross conspiracy"). *United States v. Ross*, File No. 1:96-CR-84

1

(W.D. Mich.) (Dkt. No. 112).[1] An arrest warrant was issued, but Eason was not arrested prior to the March 1997 jury trial of his co-defendants. A third superseding indictment was filed on August 25, 2004, charging Eason with the Ross conspiracy, the Curtis conspiracy, and one count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. (Dkt. No. 421.) Eason was arrested on September 1, 2004, in Chicago, Illinois. (Dkt. No. 422.)

The Court initially appointed Attorney Lawrence Phelan to represent Eason. (Dkt. No. 430.) On November 2, 2004, the Court granted Attorney Phelan's motion to withdraw due to a conflict of interest. (Dkt. No. 450.) The Court also granted an ends of justice continuance in order to provide new counsel sufficient time to prepare for trial or other disposition of the case. (*Id.*) On November 9, 2004, the Court appointed Attorney John Karafa to represent Eason. (Dkt. No. 455.)

Eason's jury trial commenced on January 10, 2005. The trial included the testimony of nineteen co-conspirators. On January 14, 2005, the jury returned its verdict finding Eason guilty on all three counts of the third superseding indictment. (Dkt. No. 490.)[2] Eason was sentenced to forty years in custody and five years of supervised release. (Dkt. No. 539.) Eason's conviction and sentence were affirmed on appeal. *United States v. Eason*, No. 05-

---

[1] Unless otherwise indicated, all docket numbers in this opinion refer to the docket for File No. 1:96-CR-84.

[2] The indictment against Eason in File No. 1:96-CR-72 was dismissed on July 5, 2005, in light of his conviction in the related criminal case in File No. 1:96-CR-84. (File No. 1:96-CR-72, Dkt. No. 292.)

1874, slip copy (6th Cir. July 14, 2006) (File No. 1:96-CR-84, Dkt. No. 580). Eason timely filed this § 2255 motion on July 16, 2007.

## II.

A prisoner who moves to vacate his sentence under § 2255 must show that the sentence was imposed in violation of the Constitution or laws of the United States, that the court was without jurisdiction to impose such sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. 28 U.S.C. § 2255. To prevail on a § 2255 motion "a petitioner must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict." *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005) (quoting *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003)).

As a general rule, claims not raised on direct appeal are procedurally defaulted and may not be raised on collateral review unless the petitioner shows either 1) "cause" and "actual prejudice" or 2) "actual innocence." *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982). An ineffective assistance of counsel claim, however, is not subject to the procedural default rule. *Massaro*, 538 U.S. at 504. An ineffective assistance of counsel claim may be raised in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal. *Id.*

A court is generally required to grant a hearing to determine the issues and make findings of fact and conclusions of law on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief . . . ." 28 U.S.C. § 2255. No evidentiary hearing is required if the petitioner's allegations "cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also conducted the trial, the judge may rely on his or her recollections of the trial. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996).

**III.**

Eason seeks relief based upon four separate claims of ineffective assistance of counsel. He alleges that counsel was ineffective for failing to attempt to obtain a plea agreement, for failing to advise him of his right to testify, for failing to raise a *Batson* challenge during jury selection, and for failing to move for a continuance.

To make out a claim of ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness, and that he was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

4

**A. Plea Agreement**

Eason's first contention is that counsel was ineffective for failing to attempt to obtain a plea agreement. Eason contends that Attorney Karafa advised him that there was no plea offer and that he would not attempt to seek a plea offer.

Eason has acknowledged that his first attorney, Attorney Phelan, advised him on more than five occasions that a plea offer was available. (Dkt. No. 1, § 2255 Mot. 5.) Attorney Karafa reviewed Attorney Phelan's file documents, including a letter Phelan sent to Eason dated October 27, 2004, explaining that the plea agreement Phelan had negotiated with the government would only stay open until Thursday, October 28, 2004, and that if Eason did not enter a plea on that date, the only plea that the government would accept was a plea to the indictment. (Dkt. No. 7, Gov.'s Resp., Karafa Aff. ¶ 9.) A change of plea hearing was scheduled for October 28, 2004, but although the parties appeared in court on that date, Eason did not enter a plea. (Dkt. No. 446, 10/28/04 Mins.) Attorney Phelan advised Attorney Karafa of his efforts to arrive at a reasonable plea disposition in this case and Eason's refusal to accept the plea offers. (Karafa Aff. ¶¶ 10-11.) The government advised Attorney Karafa on November 8, 2004, that the "great deal" it had offered Eason was no longer available because Eason's proffer session did not go well. (Karafa Aff. ¶ 13.) On December 17, 2004, the government further advised that it would not entertain any plea negotiations unless Eason "really wants to come to the table and fess up." (Karafa Aff. ¶ 15.) Attorney Karafa states that he visited Eason in jail the same day to discuss weighing the options of trial versus a plea. According to Karafa, Eason became agitated and repeatedly

interrupted and deviated from the topic of plea negotiations. (Karafa Aff. ¶¶ 16-29 and 12/17/04 memo to file.) Attorney Karafa noted in his memo to the file that during the course of the December 17, 2004, meeting Eason made it "very clear" that "he would not cooperate with anyone under any circumstances, that he's not going to enter into a plea agreement and that he would rather face life imprisonment than 20 years in any event, and that he will go to trial and spend his time filing lawsuits, contacting the ACLU, etc." (*Id.*) Based upon his review of the file, as well as his discussions with Eason, Attorney Phelan, and the government, Attorney Karafa concluded that Eason "absolutely rejected the idea of pleading guilty pursuant to a plea agreement with the government." (Karafa Aff. ¶ 20.) According to Attorney Karafa, Eason never requested him to pursue or reopen plea discussions. (*Id.*) At the final pretrial conference on January 4, 2005, Attorney Karafa advised the Court in Eason's presence that he had discussed the subject of plea negotiations with Eason, but that their discussions did not yield any proposals to bring to the government. (Dkt. No. 547, Tr. of Final Pretrial Conf. 45.) The Court subsequently addressed Eason directly regarding his complaints about his attorney's alleged conflict of interest. (*Id.* at 50-52.) Eason raised a number of issues with the Court, but he did not suggest that he wanted to enter into plea negotiations.

While the Court is aware that "[a] defense attorney's failure to notify his client of a prosecutor's plea offer constitutes ineffective assistance of counsel," *Griffin v. United States*, 330 F.3d 733, 737 (6th Cir. 2003), the Court is not aware of any authority to suggest that the failure to "attempt to obtain" a plea agreement constitutes ineffective assistance of counsel.

6

In any event, even if the Court were to accept Eason's assertion that counsel failed to attempt to obtain a plea agreement, and even if the Court were to find that such failure fell below an objective standard of reasonableness, Eason nevertheless cannot show any prejudice stemming from that failure. Given Eason's admitted rejection of five previous plea offers, the failure of his proffer session, the government's ultimatum with respect to its October 28 plea offer, and Eason's failure to contradict his attorney's representation in open court that they had discussed plea negotiations, the record does not support Eason's suggestion that he would have entered into a plea but for counsel's alleged failure to initiate plea negotiations. Although Eason has stated, under penalty of perjury, that counsel's failure to seek a plea offer was against Eason's wishes, (Dkt. No. 1, § 2255 Mot. at 5), this statement is contradicted by the record and is inherently incredible.

**B.  Right to Testify**

Eason asserts that counsel ineffectively failed to advise him of his right to testify on his own behalf and improperly coerced him to relinquish his right to testify in his own defense at trial. (§ 2255 Mot. 6; Dkt. No. 12, Reply Br. 4.) Eason also states in his affidavit that he did not knowingly and intelligently waive the right to testify. (Reply Br., Eason Aff. ¶ 8.) According to Eason, if he had testified he could have directly contradicted the government's witnesses' testimony that he was selling drugs in Indiana and that he had possessed firearms. (Reply Br. 4-5.)

Eason's assertions are contradicted by the record. This Court had a lengthy colloquy with Eason on the record at which time Eason assured the Court that he had discussed his

right to testify with counsel, that he understood this right, and that he was choosing to remain silent:

> THE COURT:  Do you understand that you have the right to take the witness stand on your own behalf in this matter and give testimony?
>
> DEFENDANT EASON:  Yes.
>
> THE COURT:  Do you understand that you could be questioned by your attorney about matters relevant to this case and the government would then have an opportunity to cross-examine you as to those facts and circumstances? Do you understand that?
>
> DEFENDANT EASON:  Yes.
>
> THE COURT:  And what is your desire as it pertains to testifying or not testifying?
>
> DEFENDANT EASON:  I'd rather not testify.
>
> THE COURT:  Now, in saying you would rather not testify, you understand that you would be then what we call giving up the right to testify; is that right?
>
> DEFENDANT EASON:  Yes.
>
> THE COURT:  Do you have any questions about that right which you would be giving up?
>
> DEFENDANT EASON:  No.
>
> THE COURT:  Okay. Mr. Karafa, are there any additional questions that you believe the Court should ask of your client as it relates to that?
>
> MR. KARAFA:  I don't believe so, Your Honor.  I have talked with Mr. Eason quite extensively about his options and his constitutional rights with regard to both testifying and not testifying, and I believe the Court has adequately addressed the matter at this point.
>
> THE COURT:  You understand, Mr. Eason, in your not testifying, no one can comment about your not testifying, and the jury will be so advised of that?

DEFENDANT EASON:  Yes.

THE COURT:  You understand that?

DEFENDANT EASON:  Yes, sir.

THE COURT:  Any questions about that that I can answer for you?

DEFENDANT EASON:  Well, a lot of things changed in my life, and by me testifying, I can't even recall a lot of things back in 1990 and '91 and '92 and '93 because a lot of people saying that they was knowing me in '96 and '95, I wasn't even in the western -- in the Midwest living.  I wasn't even here.  I mean, I was -- I was -- I pursued an acting career in California.  I was in "The Racing" with Arnold Swartzenegger and Vanessa Williams, I played the Chicago police on "ER", I was a California ironworker for Local 433.  My last job was at the stadium where the Lakers play at.  I was working.  I changed my life.  I mean, I don't know why they saying all these things.

THE COURT:  Okay.  I can appreciate that.  But you understand that if you testify, you can tell the jury all these things, but if you do not testify, you could not be cross-examined and no comment could be made about your failure to testify?

DEFENDANT EASON:  Could you repeat that?  I --

THE COURT:  You understand that you have the right to testify in this case?

DEFENDANT EASON:  Uh-huh.  Yes, sir.  Yes, Your Honor.

THE COURT:  But you have the right to remain silent.

DEFENDANT EASON:  I'd rather remain silent.

THE COURT:  Okay.  You've given this some thought?

DEFENDANT EASON:  Yes, because I can't remember a lot.  I can't remember a lot of things.

9

(Dkt. No. 551, Tr. IV at 48-50.)[3]

If a defendant disagrees with counsel's advice not to testify, he must alert the court about that desire or waive his right to testify:

> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must "alert the trial court" that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred by the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Gonzales v. Elo*, 233 F.3d 348, 356-57 (6th Cir. 2000) (citations omitted). Eason was provided with an ample opportunity to advise the Court of his desire to testify or his disagreement with counsel's recommendation not to testify. By failing to do so he waived his right to testify or to object to counsel's strategy. There is nothing in the record to suggest that Eason's waiver of his right to testify was coerced or that he did not knowingly and intelligently waive the right to testify.

## C. *Batson* Challenge

Eason contends that his counsel was ineffective for failing to raise a *Batson*[4] challenge when the government struck each black juror from the jury panel during jury selection. Eason has not identified which of the prospective jurors were black. The most specificity he

---

[3]The trial transcript consists of four volumes. (Dkt. Nos. 548-551.) The trial transcripts will be referenced as "Tr." followed by the volume number and page number, e.g. "Tr. IV at 47."

[4]*Batson v. Kentucky*, 476 U.S. 79 (1986).

10

has offered is that one black juror stated that her brother was convicted, and she was struck from the panel as a result.

The record does not indicate which, if any, of the prospective jurors who were seated in the jury box during voir dire were black. The record does indicate that Juror Lopez stated that her brother had been convicted for conspiracy and deported to the Dominican Republic and that she was excused. (Tr. I at 27-28.) Contrary to Eason's assertions, the government did not exercise a peremptory challenge to remove this juror. The Court excused this juror for cause because she stated that her conscience did not allow her to judge anybody (Tr. I at 29-30.) The government exercised six peremptory challenges, but there is no evidence in the record to suggest that any one of these potential jurors was black. (Tr. I at 41, 46, 50, 59, 68, 69). Neither Attorney Karafa nor the government recall the government striking any jurors of a racial minority. (Karafa Aff. ¶ 43; Gov.'s Resp. 9.) In fact, when Attorney Karafa raised an objection to the representation of the jury panel, he noted on the record that there were only two people of color, both of whom were removed for cause. (Tr. I at 72.) The record simply does not support Eason's assertion that counsel was ineffective for failing to raise a *Batson* challenge because there is no evidence that the government used any peremptory challenges to excuse a single juror of color.

### D. Continuance

Eason contends that counsel was ineffective for failing to move for a continuance so as to investigate, interview and call witnesses. Eason contends that because Attorney Karafa did not consult with him until mid-December, and because of the intervening holidays,

11

Attorney Karafa could not have adequately prepared his case in such short time. Eason cites *United States v. Cronic*, 466 U.S. 648 (1984), in support of the proposition that appointment of counsel close to the start of trial amounts to a denial of effective assistance of counsel.

Eason's reliance on *Cronic* is misplaced. In *Cronic* the Court observed that it had presumed prejudice in *Powell v. Alabama*, 287 U.S. 45 (1932), when there was an indefinite appointment of defense counsel a mere six days before a trial on a highly publicized capital case against multiple young, illiterate defendants. *Id.* at 660. "*Powell* was thus a case in which the surrounding circumstances made it so unlikely that any lawyer could provide effective assistance that ineffectiveness was properly presumed without inquiry into actual performance at trial." *Cronic*, 466 U.S. at 661. The Supreme Court emphasized that "only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial." *Cronic*, 466 U.S. at 662.

The circumstances of this case do not come close to the circumstances that justified the presumption of ineffectiveness in *Powell*. Attorney Karafa was appointed to represent Eason two months before trial. Attorney Karafa had the benefit of Attorney Phelan's preliminary work on the case, (Karafa Aff. ¶ 9), and, as noted by Eason, he also had the benefit of transcripts of the testimony of the government's witnesses from previous trials. There is no basis for presuming that Attorney Karafa needed additional time to prepare for trial.

12

In *Cronic* the Supreme Court reiterated that apart from those situations where counsel was "totally absent" or "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or other circumstances of such magnitude, "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659 nn. 25, 26.

The specific errors Eason relies on in his motion are counsel's failure to interview several unidentified witnesses who could have provided an alibi defense and from whom Eason states he had obtained affidavits, and counsel's failure to investigate the government's witnesses to show that they had no prior connection to the case. (§ 2255 Mot. 9.)

According to Attorney Karafa, Eason refused to discuss any potential defense witnesses in any detail because he did not want them contacted or getting involved. This included a refusal to divulge the name of the person he indicated he had been living with in California. (Karafa Aff. ¶ 12.)

It was only after Attorney Karafa denied having received names of witnesses from Eason that Eason submitted, in his reply brief, affidavits of three individuals who he contends could have provided him an alibi. Specifically, Eason has provided affidavits signed in 2007 from Angela Spencer, his common law wife, and Percy Perkins, his father, who state that Petitioner was living in California during the relevant time frame, and Evelyn Boyles, the mother of his child, who states that Eason had not been in Michigan since 1991. None of these affidavits indicate that the signers provided affidavits or otherwise advised Attorney Karafa prior to trial that they could give this testimony. The affidavits accordingly do not

13

refute Attorney Karafa's statement that Eason provided no names of potential witnesses prior to trial.

The record does indicate that Eason provided one affidavit to counsel prior to trial. Tony Terry testified at trial that Eason attempted to have him sign a false affidavit indicating that he had never been involved in drug dealings with Eason, and that Eason tried to intimidate him into falsely denying knowledge of Eason's drug activities. (Tr. I at 189-93.) When shown an affidavit produced by Eason that was purportedly signed by Terry, Terry denied that the signature was his own. (Tr. I at 202-04).

The Court specifically asked Eason on the record about his choice not to call witnesses at trial.

> THE COURT:  Mr. Eason, if would you please stand.  You've heard the statement from your lawyer that he does not intend to produce evidence; is that correct?
>
> DEFENDANT EASON:  Yes.
>
> THE COURT:  Do you agree with that?
>
> DEFENDANT EASON:  Yes.

(Tr. IV at 47.) Later the Court inquired if there were witnesses that Mr. Eason would have desired to have called or evidence that he would have desired to have presented:

> DEFENDANT EASON:  Yes, but -- yes, there was some, there was a few witnesses I would like to have had called, and there was a procedure that I had suggested to Mr. Karafa that we should have taken by me being identified, like a lot of people don't even know me.

14

(Tr. IV at 50.) Eason then focused on his idea of having someone else sit in for him at trial in order to test the witnesses' ability to identify him in court. (Tr. IV at 51-52.) He did not identify any witnesses he would have desired to have called to testify.

The Court concludes that Eason's contention that counsel was ineffective for failing to seek a continuance to enable him to investigate, interview and call witnesses is vague, conclusory, and contradicted by the record.

**IV.**

The files and records in this case conclusively show that the Eason is entitled to no relief under § 2255. Accordingly no evidentiary hearing is required to resolve the merits of the pending motion. For the reasons stated herein, Eason's motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 must be denied. An order consistent with this opinion will be entered.


Dated: <u>October 30, 2008</u>                              /s/ Robert Holmes Bell
                                                            ROBERT HOLMES BELL
                                                            UNITED STATES DISTRICT JUDGE